HENRY W. KING, ET AL. V. J. E. HOPKINS ET AL.

SELLER MAY RESCIND THE SALE AND REPLEVY THE PROPERTY.

> Where the purchaser of goods has made a representation as to a material matter, relied and acted upon by the other party, and which he was authorized to rely upon, and which the person making it believed to be true, and the facts justified the belief, the person to whom such representation is made is authorized to rescind the contract and take the property by replevin proceedings, as he might do in a case of actual fraud.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

The principal question discussed by counsel in this case was, whether the trial court erred in the instructions, general and special, given to the jury, or in refusing to give certain special charges asked for by the plaintiffs in error, who were the plaintiffs below. A bill of exceptions was allowed by the court on the overruling of a motion for a new trial filed by the plaintiffs, based in the rulings of the court as to the rejection of evidence offered by the plaintiffs; and on the ground that the verdict rendered was against the weight of the evidence, which bill contained all of the evidence received, the charges given and refused, and the exceptions taken to the rulings of the court at the trial.

The action was one brought by the plaintiffs against Hopkins and Mr. Stahlberg, the latter of whom was the assignee of Hopkins, for the benefit of his creditors. It was an action of replevin, and sought to recover the possession of a large amount of clothing which the petition alleged was the property of the plaintiffs, and that they were entitled to immediate possession of the same, and that Mr. Stahlberg wrongfully kept them out of the possession thereof. All of these averments were denied by the answer of the defendants. The papers show that certain of the property described in the petition, and in the affidavit in replevin, was taken by the officer under the writ which was issued, and that, on the execution of the undertaking provided for by the statute, the same had been delivered to the plaintiffs.

On the trial of the case the evidence showed substantially this state of facts, or at least tended to show it: That on or about the 7th day of September, 1892, Hopkins, then a resident of Cincinnati, and engaged in selling goods there on the installment plan, applied to plaintiffs, wholesale merchants doing business in Chicago, to purchase goods from them to be sold at his place of business in Cincinnati, and as he wished to buy on credit, plaintiffs had a conversation with him in regard to his property, indebtedness, etc., in order to determine whether they would extend credit to him. At that time Hopkins represented to plaintiffs, "that he had a stock of goods worth $18,000, and that he always had more accounts on his books than sufficient to meet his outstanding indebtedness." He did not state the amount of his indebtedness, or in what shape it was, or whether any of it was evidenced by judgment notes. No inquiry as to this was made by plaintiffs.

The plaintiffs, relying upon those representations, sold to Hopkins, on the 12th and 23d of September goods to the amount of $1,180.50, which were at once shipped to him at Cincinnati, and by the agreement of parties. Hopkins was to pay for them in four months from November 15, 1892. No money was paid therefor by defendant then or afterwards, and no notes or securities taken. The evidence further tended to show that at the time these representations were made, Hopkins had valid judgment notes outstanding against him to the amount of about $11,000.00 held by two firms, in addition to other amounts which he owed to other persons. That, being pressed for payment on those notes, he made an arrangement with Mr. Stahlberg, November 16, 1892, after the recovery of judgments on the judgment notes. That at that time Hopkins' liabilties were about $26,000.00. That $6,400.00 was realized by the assignee from the stock and fixtures, but nothing was realized from the accounts. That the stock and fixtures were appraised at $7,540.00, and the accounts at $1,582.50; that this appraisement of the goods was at about 50 cents on the dollar, and was a fair appraisement. As we gather from the evidence, the nominal value of the accounts at the time of the assignment was about $5,000.00, and the value of the stock of goods held at the time the representations were made, was considerabley less than it was at the time of the assignment, and it is probable, too, that it was so as to the amount and value of the accounts, or at least about September 1st. There was evidence, too, tending to show that the plaintiff, to whom he made these representations, believed them to be true, and had ground so to believe.

Leaving out of view for the present the question as to the representation that his stock of goods was then worth $18,000.00, what is the meaning of representation "that he always had more accounts on his books than sufficient to meet his outstanding indebtness." It seems to us that it was a representation that he had *good* accounts to an amount greater than his indebtness at that time, and always. If this be so, it seems clear from the evidence that such representation was not true. At all events, there was evidence which strongly tended to show that it was not. Conceding, then, that Hopkins believed it to be true, and had reasonable ground for the belief, would this operate to deprive plaintiffs of the right to rescind the contract of sale and regain the possession of the property by replevin or otherwise? There is no question but that, if such representations had been falsely and fraudulently made, the plaintiff, while the goods were in possession of the vendee, or his assignee for the benefit of his creditors, acting promptly on the discovery of the fraud, and restoring the purchaser as far as possible to his original position, might declare the contract rescinded, and by replevin rightfully resume the possession of their property thus fraudulently taken from them. *Tacoltt* v. *Henderson* 31 O. S., 162; *Wilmot* v. *Lyon et al*, 49 O. S., 296.

But it also seems to be the clear law of this state, that in an action brought by one person against another to recover damages resulting from false representations made in a contract, the plaintiff is not entitled to recover, even if it is shown that material representations were made by the defendant which were untrue, if they were in good faith believed by him to be true, and the facts in the case justified the belief *Taylor* v. *Leith,* 26 O. S., 428; *Parmlee* v. *Adolph*, 28 O. S., 10, 20. But so far as we are aware, there has been no direct adjudication by the supreme court of this state on the question whether, where there has been a representation as to a material matter, relied and acted upon by the other party, and which he was

authorized to rely upon, and which was untrue, but which the person making it believed to be true, and the facts justified the belief, the person to whom the representation was made was authorized to rescind the contract and take the property by replevin proceedings, as he might do in a case of actual fraud.

The case which apparently comes nearer deciding the question than any to which our attention has been called is that of *Parmlee* v. *Adolph supra.* In the last clause of the syllabus of that case it is said:

"To constitute representations fraudulent so as to be a ground for the rescission of a contract, they must be both false and fraudulent. If they are made with an honest belief at the time of their truth, they are not fraudulent: but if made recklessly and without any knowledge or information on the subject calculated to induce such belief, and they are untrue, they are fraudulent."

It would seem that there was nothing in the case as disclosed therein that would justify the broad language of the court in the first part of the syllabus quoted. The question in the case on this point seemed to have arisen on the fourth request made to the trial judge, to give a special charge to the effect, that if the defendant "made the representations above set forth, and honestly believed them to be true, then he would not be guilty of fraud or recklessness unless something more appeared." This charge the court refused to give, and the supreme court held that there was no error in this action, on the ground that it was not a competent statement of the law, and would probably have misled the jury. They say in the opinion:

"This request is based upon the idea that where a party simply believes in the truth of a representation made by him, upon which another parts with his property or his rights, he will not be guilty of fraud or gross negligence. This doctrine appears to be sound where the credit of the party recommended is involved, and nothing more. Such recommendations are generally understood to be nothing more than the opinion of those who give them, resting upon common reputation, and the apparent circumstances of the individual recommended, and not upon any examination of his affairs. And it is well known that men who are apparently in good circumstances and credit, turn out to be really insolvent. In such cases a recommendation of that kind should not be presumed fradulent because it happens not to be true. But the rule is otherwise where the false representation induces the contract between the parties, and enters into it. It is otherwise where the party making the false representations is bound to know the truth of his representations—then mere belief in their truth will not excuse. One is responsible for his belief in a case where a prudent person might know the truth of the facts upon which his supposed belief is founded. * * *

"Where a party, from the nature of the transaction and his relation to the parties, and the facts are such that he is chargeable with a knowledge of the truth of the representation he makes, if they are false he cannot escape liability by saying he believed them to be true. It was his duty to know whether they were true, and his belief will not excuse him from liability to the person injured thereby, unless the facts will reasonably justify a prudent man in such belief."

It would seem, too, that the doctrine of this syllabus is somewhat varied by that announced in the case of *Mulvey* v. *King*, 39 O. S., 491. The syllabus of that case is this:

"Where a person, by means of false representations of facts materially affecting the identity and value of certain real estate, induces another to enter into a contract for the purchase thereof, upon the faith of such representations, and upon which he was justified in relying, the purchaser may, in an action brought by the vendor for the purchase price recoup the damages which he has sustained by reason of such false representations, although the vendor believed them to be true when he made them, and had good reason for so believing."

And in the opinion by Judge Upson speaking for the court, it is said :

"It may be considered as well settled in this state, by the cases above cited, that an action for damages, caused by misrepresentation, cannot be maintained without proof of actual fraud, or such gross negligence as amounts to fraud. When, however, a person claims the benefit of a contract into which he has induced another to enter by means of misrepresentations, however honestly made, the same principles cannot be applied. It is, then, only necessary to prove that the representation was material and substantial, affecting the identity, value or character of the subject-matter of the contract; that it was false; that the other party had a right to rely upon it, and that he was so induced by it to make the contract, in order to entitle him to relief, either by the rescission of the contract, or by recoupment in a suit brought to enforce it."

In the case at bar it would seem that as the defendant, the assignee for the benefit of creditors, and who stood in the shoes of Hopkins, was by way of defense, asserting a contract of sale between the plaintiffs and his assignor, by which, as he claimed, the goods became the property of Hopkins, there is ground to believe that in this case the plaintiffs were at liberty to show that such contract was invalid, and should not, in effect, be enforced, by proving that false representations had been made to them to induce them to enter into this contract on which they were authorized to rely, and did rely, and which induced them to make the contract, and that these representations were untrue, even if the purchaser believed them to be true, and had reasonable ground for his belief. Unless there is some technical rule to the contrary, it would appear that the doctrine and reasoning of the court in the case of *Mulvey* v. *King, supra,* would apply to this kind of a case as well as to the one before that court. It is clear, from the cases decided by our own supreme court, that a court of equity would not enforce such a contract in an action for specific performance, and in an action at law to recover on such a contract, would allow the defendant to recoup his damages suffered by reason of such a contract, though the representations were innocently made, as by mistake. And it is difficult for me to see, why, under our liberal practice, the same result should not be arrived at by allowing the person to whom such representations were made, to rescind the contract and replevy the goods, where nothing had been paid on them, and no notes therefor had been given, as was the fact in this case. And in my judgment such seems to be the weight of the recent authorities.

Bigelow on Fraud, page 77, makes this statement of law in relation to this subject:

"Judicial rescission may be of two kinds : one a substitute for ' rescission *in pais* ' where the latter would be equally effectual as rescission ; the other where it is necessary to retort to the courts, not for the purpose of recovering the property merely, but to obtain rescission itself. The former case occurs where the defrauded party in a sale or the like

has received nothing of value from the wrong-doer, and instead of making demand out of court for his property, by way of rescission, proceeds at once to sue for it, as by trover or replevin, which he may do."

And he cites quite a number of cases in support of the proposition. And again on page 411, a part where he is discussing the rights of the parties under the head of "Innocent Misrepresentation," the same view is taken, and he quotes the decision in the case of *Stevens* v. *Austin*, 1 Met., 557, to the effect of rescission of a sale of personalty for misrepresentation by the purchaser, revests the title in the vendor *ipso facto*. And the vendor, if he has nothing to return, may thereupon sue in replevin or trover without a prior demand." See, also, the discussion of the question in Anson on Contracts, and Wald's Pollock on Contracts.

While the law on this point is not clear, I incline to the opinion that on the state of facts suggested, viz.: an innocent but really untrue representation by the purchaser, such rescission may be made in an action of this kind and the goods be properly reclaimed. Judge Swing doubts whether under the law as it stands, this can be done, but in the view we take of the case, this division of opinion on a rather abstract question, is not important here, for the reason hereinafter stated.

The question under discussion was raised, or attempted to be raised, in this way: The plaintiffs asked the court to give to the jury special charge No. 1, as follows:

"If you find that at the time Hopkins purchased these goods from the plaintiffs, he represented to the plaintiffs that his stock in trade was worth $18,000.00, and that his outstandings equalled his liabilities, and the plaintiffs relied upon this statement, and if you find that this statement was substantially untrue, then the plaintiffs were entitled to rescind the contract and recover the goods irrespective of the question whether Hopkins believed the statement to be true or not, and irrespective of whether he had reason to believe it to be true or not. The only question is whether it was substantially true in fact."

We incline to the opinion that this charge so requested did not fairly raise the question which has been discussed. It does not take into the account the question whether the plaintiffs parted with their goods, and were induced to do so on account of these representations—only that they relied upon them. Something more than this was necessary. They might have relied upon them, and yet have been induced to sell the goods, or part with the possession of them for other and different considerations. And it is perhaps objectionable on the ground that it practically tells the jury that if they find such representation to be substantially untrue, that plaintiffs, as a matter of law, were entitled to rescind the contract and recover the goods. This might depend upon the question whether the plaintiffs had been prompt in their action on the discovery of the fraud, and if any restoration was necessary, whether it had been made, which were questions of fact to be found by the jury under appropriate instructions from the court, as to which the charge requested is silent.

But whatever may be the law on this particular point, we are of the opinion that substantial justice has not been done in this case, and that on the evidence introduced, the verdict should have been in favor of the plaintiffs below. We think it quite apparent, from the testimony of Hopkins himself, that at the time of making these representations he did not have a stock of goods worth $18,000.00, and that he had not always, nor at that time, accounts on his books more than sufficient to meet his

King et al. v. Hopkins et al.

outstanding indebtedness. And furthermore, that he could not have believed that these statements were true, in view of all the circumstances of the case ; or to say the least of it, they were made recklessly and without any information on the subject "calculated to induce such belief;" and as they were untrue, they are fraudulent. According to his own statement, just previous to September 1, he had a stock of goods of the value of something near $10,000.00 and after the large purchases made by him after that time including those purchased from plaintiffs and others shortly before the assignment to Mr. Stahlberg, it probably did not amount to more than $14,000 or $15,000, for it was only appraised, including the fixtures, at $7,540.00, or at 50 cents on the dollar, and many of these goods were of old styles and of little value. But if it be conceded that his representation as to his stock of goods being worth $18,000 was well founded, it seems clear from his own statements and the undisputed statements of other witnesses, that at the time of those representations, or for some time before, he did not have on his books accounts more than sufficient to meet his liabilities. As has been stated, during the summer before, these accounts at no time amounted to $10,000. His indebtedness during that summer on the judgment notes held by two persons alone, was between $11,000 and $12,000 and he was largely indebted to others as we gather from his rather unsatisfactory testimony. His whole indebtedness at his assignment, November 16, 1892, was $26,-000—$13,000 to others than those holding the judgment notes. And although he did considerable business after he purchased new goods from the plaintiff and others, in September and October, and up to the assignment in the middle of November, selling in his usual way, on the installment plan, his book accounts at his assignment in November, as we understand, at their face value only amounted to $3.182.50, and which we think were practically worthless, for at the time of the trial on April —, 1894, nearly two years after the assignment, nothing whatever had been collected thereon. Indeed, Hopkins himself testifies that he could not tell how much of his accounts were good, bad or indifferent. That it depends a great deal upon circumstances as to whose accounts in installment houses are good, bad or indifferent. He said that he thought that if he had remained in business, a large proportion of them could have been collected (how large a proportion he did not say), but that he did not suppose that any installment house in Cincinnati would have given ten cents on the dollar for them in case of an assignment; that they are generally poor people who thus buy, and that they take advantages. It appears from the evidence of the appraisers that on many of these accounts nothing had been paid for years, but that all of them entered into the appraisement made. We are satisfied that they were substantially worthless.

If those statements and conclusions are correct, the case is brought clearly within the doctrine of the cases referred to, and the representations were false and fraudulent as to these accounts, and the plaintiffs had the right to rescind the contract by taking the goods, as they did.

We see no other error in the proceedings, and on this ground the judgment will be reversed, and the cause remanded for a new trial.

*W. C. Herron*, for Plaintiff in Error.
*Wilby & Wald*, for Defendant in Error.